IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

SAMUEL COLEMAN                                                                    PETITIONER

VS.                                                              CIVIL ACTION NO  3:07cv748-DPJ-JCS

STATE OF MISSISSIPPI                                                             RESPONDENT


**REPORT AND RECOMMENDATION**


This cause is before the court on the petition for a writ of habeas corpus filed by

Samuel Coleman, a state prisoner.  Having considered the petition and response, the

undersigned recommends that habeas relief be denied and the petition be dismissed with

prejudice.

**I. Facts and Procedural History**

Donna Piner lived in Jackson, Mississippi with her boyfriend and her adopted

daughter.  In the late afternoon of January 22, 2002, Piner asked Samuel Coleman, an

acquaintance of Piner and of Piner's boyfriend, to give her a ride to a nearby store.

Coleman agreed.  According to Piner's testimony at trial, over the next several hours

Coleman repeatedly beat, raped, and sexually assaulted her, driving around and stopping

at various secluded locations for these assaults.  Finally, in the early morning hours of

January 23, Coleman fell asleep in the car and Piner was able to escape.  After

unsuccessfully attempting to flag down several cars, she approached a house around

3:00 a.m. and asked for help.  The occupants of the home assisted her by providing

clothes and water and then called the police. Officers from the Jackson Police

Department as well as the Hinds County Sheriff's Department responded, and Piner

accompanied them back to the location of Coleman's car.   When they arrived, Coleman

was still asleep in the car.  The officers awakened him and placed him under arrest.

Piner was taken to University of Mississippi Medical Center emergency room, where she

underwent treatment for her injuries and the administration of tests and collection of

samples by a specially-trained nurse pursuant to the hospital's sexual assault protocol.

Piner was then released.

Coleman was indicted in the Circuit Court of Hinds County, Mississippi and tried on

three counts of rape and one count of aggravated assault.  In addition to the testimony of

the victim, the prosecution's case included testimony by the investigating officers, the

couple who assisted her and called the police, and emergency room medical personnel.

The medical  evidence indicated Piner had sustained blows to the head and face, bruises

on her arms, legs, face and head, and a vaginal tear.  The presence of semen was

detected, and DNA testing later revealed Coleman to have been its source.

Coleman's defense consisted of his own testimony, in which he admitted having spent

several hours driving around with Piner, drinking beer, and engaging in sexual activity; he

claimed, however,  that all the sexual acts between him and Piner had been consensual.

The jury convicted Coleman of one count of rape and one count of aggravated

assault.  He was sentenced as a habitual offender to serve twenty years on the rape

count and twenty-five years on the aggravated assault count, the sentences to run

consecutively.  His convictions and sentences were affirmed on direct appeal.  He

subsequently sought post-conviction relief in state court; this was denied.  He now seeks

relief pursuant to 28 U.S.C. § 2254, alleging as his single ground for relief that he was

2

denied due process by the prosecution's failure to disclose evidence favorable to him. *See Brady v. Maryland*, 373 U.S. 83, 86-87 (1963). [1]

## II. Analysis

The subject of Plaintiff's *Brady* claim is a set of photographs offered into evidence at trial by the state. The photographs consist of close-ups of the victim's injuries and were taken during the victim's examination by Jalea Renfroe, the sexual assault nurse examiner at the University of Mississippi Medical Center emergency room. The state first located the photographs after the trial had begun and immediately provided them to the defense. At trial Defendant objected to their admission; however, the trial court overruled the objections as to eleven of them and admitted them into evidence. Coleman, now changing his position with regard to the photographs, contends that all of the photographs which were admitted, and one which was not, were exculpatory and that the state's failure to disclose them earlier was a violation of *Brady.*

An initial matter to be resolved is this court's standard of review. The state has

---

[1]Coleman's Petition sets forth a second ground for relief, a speedy trial claim. However, he has written the words "Void - Petitioner raises only one claim" in large letters over this portion of the Petition. Accordingly, the undersigned concludes that Petitioner does not desire to raise this claim.

Coleman also refers on several occasions to ineffective assistance of counsel, and he recently filed a motion entitled "Permission to Include New Grounds of Ineffective Assistance of Counsel." However, the only specific allegation in this regard that Coleman has made is that his attorney was *unable* to render effective assistance because of the state's failure to provide the photographs prior to trial. Thus, this is really a restatement of his *Brady* claim. Because Coleman has failed to establish a *Brady* violation or any prejudice from his failure to obtain the photographs prior to trial, his allegations regarding ineffective assistance of counsel likewise fail to warrant any relief.

3

taken the position that Petitioner's *Brady* claim was previously presented to the state

court in his direct appeal and adjudicated on the merits within the meaning of 28 U.S.C. §

2554(d), thereby rendering it subject to that section's deferential standard of review.  The

undersigned disagrees.  On direct appeal, Coleman framed the issue regarding the

photographs entirely in terms of a state law discovery violation and assigned as error the

trial court's *admission* of the photographs, and the issue was accordingly addressed by

the state court of appeals in these same terms.  Nothing about Coleman's presentation of

the issue in his filings before the state court could be said to have fairly alerted the state

appellate court to the fact that he was asserting a due process violation under *Brady*.

Accordingly, there having been no adjudication on the merits, this court's review of the

merit's of Coleman's claim is *de novo*.  *See  Miller v. Johnson,* 200 F.3d 274, 281 n. 4

(5th Cir.2000).[2]

The due process clause requires the state in a criminal prosecution to disclose

---

[2]Arguably, Coleman did present his *Brady* claim to the state trial court in his
application for post-conviction relief.  However, he never perfected a timely appeal of
the trial court's denial of his application, and his application for an out-of-time appeal
was denied.  Thus, he failed to meet the exhaustion requirement of 28 U.S.C. §
2254(b)(1)(A), in that he never presented this claim to Mississippi's highest court in a
procedurally proper manner.  No relief would now be available to him in state court
because of the limitations on successive applications for post-conviction relief set
forth in Miss. Code Ann. § 99-39-23(6).  Ordinarily, this would mean that Coleman
has procedurally defaulted his claim for purposes of federal habeas review.  *See*
*Sones v. Hargett*, 61 F.3d 410, 415 (5th Cir. 1995) (if petitioner fails to exhaust state
remedies, and state court would now find claim procedurally barred, the claim is
procedurally defaulted for purposes of federal habeas review).  However, the state
has waived the procedural default issue by its failure to raise it.  *See Fisher v. Texas*,
169 F.3d 295, 301 (5th Cir. 1999).  For this reason, Coleman's claim is reviewable by
this court on the merits.

evidence favorable to the defendant that is material to guilt or punishment. *See Brady v. Maryland*, 373 U.S. 83, 86-87 (1963). In order to establish a *Brady* violation, a defendant must show that the state withheld evidence, that the evidence was favorable to the defendant, and that the evidence was material to the defense. *Avila v. Quarterman*, 560 F.3d 299, 305 (5th Cir. 2009). Favorable evidence includes both exculpatory and impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676-77 (1985). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995). A "reasonable probability" of a different result exists when the prosecution's suppression "undermines confidence in the outcome of the trial." *Graves v. Dretke*, 442 F.3d 334, 340 (5th Cir. 2006) (quoting *Kyles*, 514 U.S. at 434). Additionally, in order to establish a violation, the defendant must show that his own failure to discover the evidence was not the result of a lack of due diligence on his part. *Avila,* 560 F.3d at 305.

The photographs at issue consist of close-ups of the victim's injuries and were taken at the hospital emergency room during the forensic examination conducted by Jalea Renfroe. The specific subjects of those photographs admitted into evidence, over the defense's objections, are as follows:

Exhibit 25: Right arm with bruise

Exhibit 26: Right arm with bruises

Exhibit 27: Arm with multiple bruises

Exhibit 28: Right armpit with bruises

Exhibit 29: Side facial view of contusion and black eye

Exhibit 30: Left side facial view showing bruises on left eyebrow, jaw, and left side of neck

Exhibit 31: Left arm with bruise

Exhibit 32: Left buttocks with scratch marks

Exhibit 33: Genital region with 1 cm tear

Exhibit 34: Same subject as Exhibit 33, with tear enhanced with dye.

An additional photograph, depicting injuries to the victim's right hand, was excluded by the trial court, as were several others which were not specifically described.  Coleman's complaint is that neither he nor his attorney saw these photographs until approximately mid-way through the trial and that the state's failure to provide them to him prior to trial impaired his defense.

The record indicates the underlying facts regarding the location and production of the photographs to be undisputed.  The photographs were recorded on a computer disc that was included among the items in the sexual assault kit prepared by Renfroe during her examination of Piner.  The inventory checklist for the kit included a notation for "camera disc, " and the prosecution and the defense were provided copies of the inventory list prior to trial.  Nevertheless, the prosecutor did not actually find the disc until she opened the kit for preparation of a witness after the trial had begun.  As soon as she discovered it, she notified defense counsel and provided the photographs to him.  When the state notified the defense of its intent to introduce the photographs into evidence, the defense objected on the basis that they had not been provided during discovery.  The trial judge excluded from evidence the photograph of the victim's right hand because there had been nothing in Renfroe's report regarding any injuries to the right hand.

6

Several additional photographs were excluded because they were duplicative.   As to the

remaining photographs, the court concluded that their admission would not result in any

undue prejudice or surprise to the defense, because the injuries depicted therein had

been described in detail in the reports produced to the defense prior to trial, and because

the defense had been given notice of the existence of the disc containing the

photographs.

The undersigned concludes that Coleman has failed to establish that there was

any suppression, within the meaning of *Brady,* by the prosecution.   A state's obligations

under *Brady* do not include a responsibility to "direct the defense toward potentially

exculpatory evidence that either is in the possession of the defense or can be discovered

through the exercise of reasonable diligence." *Bigby v. Dretke*, 402 F.3d 551, 574 (5th Cir.

2005).  Both the defense and the prosecution had notice of the photographs existence

and location.  The defense could have located the disc but failed to do so.  There is no

sense in which the prosecution can be said to have withheld these photographs from the

defense.

Petitioner has likewise failed to meet the remaining prongs of *Brady*.  The

photographs can hardly be characterized as favorable or exculpatory, as they depicted

injuries to the victim and supported the victim's version of the events.  Coleman's

arguments to the contrary are specious at best, particularly in light of the fact that he did

not seek to have any of them admitted at trial.  He argues that the photograph of the

victim's right hand - which was excluded from the evidence - was favorable to him

because it could have been used to impeach the testimony of Jalea Renfroe by pointing

out her failure to document the injuries depicted in the photograph.  He also raises the

somewhat novel argument that the photo could have been used by the defense to show

that the victim's injuries were self-inflicted.   The undeniable result of admitting this

photograph into evidence, however, would have been to place additional injuries before

the jury.   As to the remaining photographs, Coleman argues that they are exculpatory

because they indicate that Piner's injuries were less serious than she claimed.  But the

photographs were admitted into evidence, and the defense was free to use the

photographs to challenge the severity of the victim's injuries.  With regard to the

photograph made of the victim's vaginal injury after enhancement with dye for the

purpose of contrast, he claims he could have used it to impeach Ms. Renfroe and to

demonstrate her incompetence by arguing that she caused the injury herself during the

examination.   There is no basis anywhere in the record for such an argument.  Moreover,

even if Coleman's arguments as to how the photographs could have been favorable to his

defense were accepted, this evidence would not meet the standard for materiality: Given

the other evidence of Coleman's guilt, it cannot be said that there exists a reasonable

probability that the result of the trial would have been different had the photograph of

Piner's right hand  been admitted into evidence or had the other photographs been

reviewed by the defense prior to trial and their admission into evidence.

### III.  Conclusion

Coleman has failed to establish that his due process rights under *Brady* were

violated in any way.  Accordingly, the undersigned recommends that habeas relief be

denied and the petition be dismissed with prejudice.  The parties are hereby notified that

failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. §636; Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009); Douglass v. United Services Automobile Association, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 1st day of April, 2010.


/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE